UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIJAH IVERSON,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent.
_____

18-CV-1448
14-CR-197
DECISION & ORDER

      Pending before this Court is *pro se* petitioner Elijah Iverson's motion to vacate his sentence under 28 U.S.C. § 2255.  No. 12-CV-9[1]; No. 14-CR-197, Docket Item 137. For the reasons that follow, the motion is denied.

## **BACKGROUND**

      On July 15, 2016, a jury convicted Iverson on five counts: (1) possessing with the intent to distribute cocaine and 28 grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1); (2) possessing with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); (3) maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1); (4) possessing a firearm in furtherance of drug-trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (5) unlawfully possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  *See* Docket Items 100, 102, 107.

---

[1] Iverson petitioned under this civil docket number to vacate his sentence. All further citations are to the underlying criminal docket.

On October 25, 2016, this Court sentenced Iverson to a term of imprisonment of 120 months on counts one, two, three, and, five, and to a consecutive term of 60 months on count four, for a total term of imprisonment of 180 months. *See* Docket Items 113, 118. Iverson appealed his conviction and sentence. *See* Docket Item 116. On February 22, 2018, the United States Court of Appeals for the Second Circuit affirmed. *See United States v. Iverson*, 897 F.3d 450 (2d Cir. 2018).

On December 7, 2018, Iverson moved to vacate his sentence under 28 U.S.C. § 2255, Docket Item 137, and then moved several times to amend, *see* Docket Items 139-43. Iverson argues that his pre-trial, trial, and appellate counsel were ineffective in failing to bring various motions to suppress evidence and to dismiss the indictment. On July 11, 2019, this Court granted Iverson's motions to amend and directed the government to respond to his most recent petition, filed June 24, 2019. Docket Item 144. The government responded on August 23, 2019, Docket Item 145, and on September 9, 2019, Iverson replied. Docket Item 146.

## DISCUSSION

### A.   Section 2255

Iverson seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). A court may dismiss a section 2255 petition without first

conducting a hearing if the petition and record "conclusively show" that the petitioner is not entitled to the relief he seeks. *Id.* § 2255(b).

### B. Ineffective Assistance of Counsel

Iverson raised various claims, all of them based on the ineffective assistance of counsel. To prove ineffective assistance of counsel, a defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).

Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner may overcome this presumption by showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland,* 466 U.S. at 689. In considering whether counsel "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances," *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996), courts look to the totality of the circumstances, are "highly deferential," and make "every effort . . . to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 688-89.

Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability" is "a probability sufficient to undermine

confidence in the outcome," *id.*, including "the overall integrity of the proceeding," *Santiago-Diaz v. United States*, 299 F. Supp. 2d 293, 300 (S.D.N.Y. 2004). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted) (quoting *Strickland*, 446 U.S. at 687, 693).

Here, Iverson argues that his attorneys were ineffective in (1) not moving to dismiss the indictment as impermissibly vague; (2) not taking various steps to challenge the admissibility of statements he made on October 22, 2014, as well as certain evidence seized from his home on October 22 and 23, 2014[2]; and (3) not moving to dismiss the indictment on Speedy Trial Act grounds. *See* Docket Items 137 and 143. To resolve Iverson's ineffective assistance of counsel claims, this Court therefore must determine whether, in not bringing these motions, counsel's performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. In doing so, the Court "must judge [the attorneys'] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

---

[2] Iverson's challenges center around two searches of his home conducted by Town of Tonawanda police officers, including one K-9, on October 22 and 23, 2014. *See* Docket Item 143. The details of those searches, which resulted in the seizure of marijuana, cocaine, cocaine base, cash, and a rifle with ammunition, are extensively detailed in this Court's prior order denying Iverson's pre-trial motion to suppress, *see* Docket Item 66, and this Court assumes the reader's familiarity with that order.

### 1. Validity of the Indictment

Iverson first argues that his attorneys were ineffective in not moving to dismiss the indictment on the grounds that it was impermissibly vague. *See* Docket Item 137 at 4.

"Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an 'indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.'" *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001) (alteration in original) (quoting Fed. R. Crim. P. 7(c)(1)). "An indictment must sufficiently inform the defendant of the charges against him and provide enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events." *Id.* (citation omitted). "An indictment, however, need not be perfect, and common sense and reason are more important than technicalities." *Id.* (citation omitted). "The scrutiny given to an indictment depends, in part, on the timing of a defendant's objection to that indictment." *Id.* (citations omitted). Where, as here, "a defendant raises an objection after a verdict has been rendered, . . . [the] indictment should be interpreted liberally, in favor of sufficiency." *See id.* (citation omitted).

Iverson argues that the indictment failed to "allege essential elements of each crime charged." *See* Docket Item 137 at 4. But he does not point to a specific deficiency, nor does this Court discern any. For each of the five crimes charged, the indictment lists the elements of the crime, the dates of their alleged commission (October 22 and 23, 2014), and—when relevant—the specific street address or weapon underlying the charge. *See* Docket Item 102. Iverson's pre-trial and trial attorneys therefore were not ineffective in not moving to dismiss the indictment as impermissibly

vague. For the same reasons, his appellate attorney also was not ineffective in not raising this argument.

### 2. October 22 and 23, 2014 Statements and Evidence

Iverson also raises several challenges with respect the October 22 and 23, 2014 searches of his residence and statements he made at the time of those searches.

#### *a.   October 22, 2014 Statements and Evidence*

Iverson first argues that his attorneys were ineffective in not moving to suppress statements made, and evidence found, during the warrantless search of his apartment on October 22, 2014. *See* Docket Item 143 at 4-5. But counsel did what Iverson now criticizes them for not doing. Indeed, Iverson's argument ignores the extensive efforts undertaken by Iverson's counsel to suppress this material.

On March 23, 2015, Iverson's counsel moved to suppress the statements and evidence obtained on October 22, 2014. *See* Docket Item 18. More specifically, Iverson's counsel moved to suppress "evidence . . . seized after an unreasonable and warrantless search of [Iverson's] residence," arguing that the warrantless search violated Iverson's rights under the Fourth Amendment to the United States Constitution, as interpreted by the Supreme Court in *Florida v. Jardines*, 569 U.S. 1 (2013). *Id.* at 5. She also moved to suppress "[a]ny alleged statement" made by Iverson "during the course of the warrantless search of his apartment and during his arrest, on October 22, 2014," because it was made while he was "in custody and in response to interrogation . . . without a knowing[,]intelligent[, and voluntary] waiver of his rights." *See id.* at 6-7.

Over two days in June and July 2015, United States Magistrate Judge Jeremiah J. McCarthy held an evidentiary hearing on that motion, *see* Docket Items 31, 41, 43,

46-47; in November 2015, both Iverson and the government provided the court with post-hearing briefing, see Docket Items 52-55; and in November 2015, Judge McCarthy heard oral argument, see Docket Item 58. Three weeks later, in December 2015, Judge McCarthy recommended denying Iverson's motion. See Docket Item 59.

Iverson's counsel then objected to Judge McCarthy's recommendation. After reviewing the defendant's objections and the government's response to those objections, this Court adopted Judge McCarthy's recommendation and denied Iverson's motion to suppress. See Docket Item 66. This Court explained that it was "undisputed that Iverson called 911 to report a person who may have been an armed robber, and the officers' behavior objectively revealed a purpose to follow up on that request for assistance." Id. at 12. The Second Circuit affirmed: "Given that the officers and [the K-9] were lawfully [in Iverson's apartment], Iverson had no legitimate or reasonable expectation of privacy in airborne particles bearing odors." Iverson, 897 F.3d at 461.

Iverson now argues that his counsel should have challenged the admissibility of these statements and evidence a second time. He asserts that the K-9 officer's testimony—as a whole and specifically with respect to Iverson's having seen, and therefore consented to the entry of, the K-9—was unreliable. In support of this assertion, he claims that in preparing the warrant application, the officer "fabricated the existence of an informant [and] omitted an earlier entry into [Iverson's] residence without his [K-9]." Docket Item 143 at 4. Even assuming that Iverson's assertions are accurate, neither circumstance is material. The relevant question simply is whether the officer had a constitutionally-sufficient justification for entering Iverson's residence, K-9 in tow, on October 22, 2014. And on that question, Iverson offers no reason to disturb this

7

Court's prior factual findings that the officers were present in Iverson's apartment "only as a result of the 911 call that Iverson himself made"; that "the human officers had at least an implicit license to enter the apartment"; that the officer brought the K-9 "to assist in the search for the suspicious person Iverson reported"; that "the officers had an implicit license to enter Iverson's apartment with [the K-9]"; and that "Iverson observed [the K-9] enter his apartment and remain without objection." Docket Item 66 at 11-12 (citations omitted).

In short, there is no reason to find that Iverson's pre-trial and trial attorneys were ineffective in not challenging the search and statements for a second time. For the same reasons, his appellate attorney also was not ineffective in not raising this argument.

### b. State-Federal Cooperation

Iverson also argues that his attorneys were ineffective in not challenging the legality of the October 23, 2014 search warrant on the grounds that the issuing magistrate, "Town [of Tonawanda] Justice Gruber[,] was not a neutral and detached magistrate but merely an adjunct law enforcement officer" and that "[n]o [f]ederal [o]fficial was involved in obtaining the state search warrant." *See* Docket Item 143 at 1-2. Neither argument has merit.

A federal prosecution may rely on evidence obtained by state law enforcement officers under a warrant issued by a state official. *See generally United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993) (citations omitted). In such circumstances, the constitutionality of the search warrant is assessed under federal law. *Id.* And Iverson offers no support for his conclusory assertion that the town justice was not a "neutral and detached magistrate"—that is, that Justice Gruber did not make a "disinterested

8

determination" about the existence of probable cause. *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). In other words, Iverson's pre-trial and trial attorneys were not ineffective in not challenging the constitutionality of the search warrant on the grounds that it was issued by a state official. For the same reasons, his appellate attorney also was not ineffective in not raising this argument.

### c. Franks Hearing

Iverson also argues that his attorneys were ineffective in not moving for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of the K-9 officer's assertions in the search warrant application. More specifically, he argues that counsel should have challenged the affidavit supporting the warrant application on the grounds that the attesting officer "fabricated the existence of an informant, omitted an earlier entry into [Iverson's] residence . . . , and included evidence from an illegal warrantless search," *id.* at 2-3.

"To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (quoting *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir. 1998)) (additional citation omitted).

Here, even if Iverson's factual assertions are correct, "after putting aside [the allegedly] erroneous information and material omission, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" *Id.* at 718

9

(quoting *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985)).  For the reasons stated above, the officers lawfully found drugs inside Iverson's residence.  They then used that contraband, as well as the defendant's voluntary statements that additional drugs were stored in the apartment, to apply for a search warrant.  *See* Docket Item 45-6 at 2-4.  Although the warrant referred to an informant, that reference was not necessary to find probable cause to believe that additional drugs were present in the apartment.  And even assuming that the officer omitted information about a prior entry into Iverson's apartment, "[a]n otherwise sufficient application for a search warrant need not relate unproductive or unsuccessful efforts in the course of the investigation," *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993) (citation omitted).

In short, even if Iverson's pre-trial counsel's performance "fell below an objective standard of reasonableness, " *Strickland,* 466 U.S. at 688, in not requesting a *Franks* hearing after the suppression hearing—a dubious assertion given that she cross-examined the attesting officer during that suppression hearing, *see* Docket Item 46—her error did not prejudice Iverson because the warrant otherwise was supported by probable cause.  For the same reasons, his trial and appellate attorneys also were not ineffective in not raising this argument.

### 3. Speedy Trial Act

Finally, Iverson argues that his attorneys were ineffective in not moving to dismiss the indictment against him on Speedy Trial Act grounds.

The Speedy Trial Act, 18 U.S.C. §§ 3161-3174, "generally requires a trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance, but the Act recognizes that criminal cases vary widely and that there are

valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489 (2006) (citing 18 U.S.C. § 3161(c)(1)).  For example, section 3161(h)(7)(A) permits a court to grant a continuance, and exclude the resulting delay, if the court finds that "the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial."  *Id.* at 498-99.  And several provisions govern the time following a defendant's pre-trial motions that require a hearing.  "Under [section] 3161(h)(1)([D])[,] any period of delay caused by any pretrial motion, from the filing of the motion through the conclusion of the hearing, is excluded."  *United States v. DiTommaso*, 817 F.2d 201, 209 (2d Cir. 1987) (citing *Henderson v. United States*, 476 U.S. 321, 326 (1986)) (footnote omitted).  "In addition, subsection ([D]) also excludes time after a hearing on a motion but before the district court receives all the submissions by counsel it needs to decide the motion."  *Id.* (citing *Henderson*, 476 U.S. at 331).  "Finally, [section] 3161(h)(1)([H]) permits the exclusion of an additional 30 days once the motion is actually taken 'under advisement' by the court."  *Id.* (citing *Henderson*, 476 U.S. at 328-29).

Iverson was indicted on October 31, 2014.  Docket Item 1.  That same day, he joined the government's motion to exclude time under section 3161(h)(7)(A) through January 21, 2015, so that counsel could complete discovery and file pre-trial motions.  Docket Items 3, 9 at 25-26, 13.  Judge McCarthy granted the motion to exclude time.  *See id.*  On January 20, 2015, Iverson's counsel moved to extend her time to file pre-trial motions by 60 days.  *See* Docket Item 15-16.  Iverson "agree[d] to the exclusion of time under the Speedy Trial Act in that the ends of justice are served by such an adjournment and outweigh the best interests of the public and [Iverson] in a speedy

11

trial."  Docket Item 16 at 3.  Judge McCarthy granted the motion and excluded time through March 23, 2015.  Docket Item 17.  On March 23, 2015, Iverson moved to suppress the statements and evidence of October 22 and 23, 2014, discussed above.  *See* Docket Item 18.  Under section 3161(h)(1)(D) and (H), time therefore was excluded until 30 days after January 25, 2016—the date this Court held argument on Iverson's objections to Judge McCarthy's Report and Recommendation.  *See* Docket Item 65.

This Court denied Iverson's suppression motion on February 25, 2016, *see* Docket Item 66, and the government moved the following day to set a trial date, *see* Docket Item 67.  On March 2, 2016, this Court granted Iverson's motion to be assigned new counsel and also granted the government's unopposed motion under section 3161(h)(7)(A) to exclude the time from March 2, 2016, through March 4, 2016, so that Iverson could be appointed new counsel.  *See* Docket Item 72.  Thereafter time was excluded twice more, with Iverson's consent and under section 3161(h)(7)(A), through July 1, 2016, so that Iverson's new counsel could prepare for trial.  *See* Docket Items 74 and 76.  Trial commenced on July 12, 2016.  *See* Docket Item 95.

This Court therefore calculates 14 unexcluded days as having elapsed under the Speedy Trial Act—the period from February 26, 2016, through March 1, 2016,[3] and

---

[3] "While it is well settled that a pretrial motion automatically tolls the speedy trial clock under 18 U.S.C. § 3161(h)(1)(D), neither the Supreme Court nor the Second Circuit has ruled definitively upon the question of whether a motion to set a trial date is 'any pretrial motion' for purposes of calculations under the [Speedy Trial Act]." *United States v. Love*, 2012 WL 4503162, at *1 (W.D.N.Y. Sept. 28, 2012) (citations omitted), *aff'd in relevant part sub nom. United States v. Holley*, 813 F.3d 117, 112 (2d Cir. 2016) (finding resolution of this issue unnecessary because, even assuming such time is not excluded, no violation would have occurred)).  This Court similarly need not reach this issue because, even assuming *arguendo* that such time is non-excludable, Iverson still would not reach the 70-day threshold.

from July 2, 2016, through July 11, 2016.  This calculation falls far short of the permitted 70 days.

Finally, and although Iverson did not specifically raise a claim under the Sixth Amendment, this Court considers such a claim in light Iverson's of *pro se* status.  "The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim."  *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) (citing 18 U.S.C. § 3173).  Nevertheless, it is an "exceptional" case "in which the Act is followed but there is a 'clear or obvious' Sixth Amendment error."  *Id.*

To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, a court must consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  *United States v. Black*, 918 F.3d 243, 254 (2d Cir. 2019) (quoting *Barker v. Wingo*, 407 U.S. 514 (1972)).  "[No] individual factor can[ ] be a 'necessary or sufficient condition' for a speedy trial violation but instead the factors are 'related' and 'must be considered together' in the context of the case."  *Id.* (quoting *Barker*, 407 U.S. at 533).

Even assuming that a delay of over twenty months is sufficient to "place[ ] a speedy trial violation on the table," *id.* (quoting *Barker*, 407 U.S. at 530), none of the remaining three factors supports such a finding.  With respect to the second factor, the delays resulted from Iverson's diligent attempts to suppress the evidence that served as the foundation of the government's case and from Iverson's request that he be assigned new counsel.  In other words, the delays were not "[a] deliberate attempt to delay the trial in order to hamper the defense," *Barker*, 407 U.S. at 531, but instead reasonable efforts to defend against the charges.  The third factor also weighs against Iverson

13

because he consented to each delay and did not assert the possibility of a speedy trial violation until well after the trial was completed. *Cf. United States v. Tigano*, 880 F.3d 602, 617 (2d Cir. 2018) (finding that the third *Barker* factor weighed in the defendant's favor where he had "requested his speedy trial so frequently and vociferously" that it was "simply inconceivable the government was not 'put on notice' that this issue would resurface if [the defendant's] speedy trial rights were not protected"). And with respect to the fourth factor, Iverson makes no effort to show that the delays prejudiced him. Indeed, doing so would be difficult given that the time about which he now complains was spent litigating the crucial suppression issue and then, as a result of his own request for new counsel, preparing for trial.

    In short, this Court finds no violation of Iverson's rights under either the Speedy Trial Act or the Sixth Amendment and certainly does not find that Iverson's pre-trial and trial attorneys were ineffective in failing to raise such a claim. For the same reasons, his appellate attorney also was not ineffective in not raising this argument.

**CONCLUSION**

For the reasons set forth above, Iverson's motion to vacate his sentence under 28 U.S.C. § 2255, Docket Item 137, is DENIED. His petition in W.D.N.Y. Docket No. 18-CV-1448 is DISMISSED; and the Clerk of Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438 (1962).

Iverson must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

DATED:   April 27, 2020
         Buffalo, New York

                                         */s/ Hon. Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE